COWAN, Plaintiff in Error, *vs.* BARRET & BROTHERTON, Defendants in Error.

1. An attorney who purchases in for his own benefit a title adverse to that of his client, is not liable to an action in favor of a subsequent grantee of his client.

*Error to St. Louis Court of Common Pleas.*

*F. A. Dick,* for plaintiff in error. 1. There was evidence tending to show that Barret acted as counsel for plaintiff, which should have gone to the jury. 2. If he did thus act, the plaintiff was entitled to the relief prayed for. *Galbraith* v. *Elder,* 8 Watts, 81. *Hockenbury* v. *Carlisle,* 5 Watts & Serg. 348. 3. The fact that Cowan did not receive the deeds under which he claimed the land, until after Brotherton's pur-chase, is immaterial.

*R. M. Field,* for defendants in error. The plaintiff never had any interest in the Vasquez claim until long after the im-puted misconduct on the part of the defendant. The plaintiff acquired an interest in the land by the deeds of Cowan and Hinton ; but there can be no pretence that he was assignee of any claim they had on the defendant.

RYLAND, Judge, delivered the opinion of the court.

It will be seen from the statement of the charges in the plaintiff's petition, that the basis of his action against the de-fendant, Barret, is upon the ground of improper conduct, as attorney at law for the plaintiff, in some business in relation to land claims in the years 1845 or 1846, up to the sale of the

land in November, 1848, at which said sale in November, 1848, the defendant, by his agent, Brotherton, purchased a portion of the land, under an adverse claim to the plaintiff; that the plaintiff claims and charges that he was the owner of three-fourths of a claim of Pierre Vasquez to a tract of land in St. Louis county, of eight hundred arpens, which tract had also been selected for school lands, and that Philip C. Johnson owned the other fourth; that plaintiff and Johnson employed defendant, as attorney at law, and that they consulted and advised with defendant in reference to said claim, as to the best course to be pursued in order to dispose of the same to the best advantage; that plaintiff put defendant, Barret, into the possession of all the facts upon which said claim was founded, and mentioned to him what he, plaintiff, conceived to be the defects in the title under it; that plaintiff left the management of the business to said Barret, as plaintiff was residing in Washington county; that said Barret, acting for the plaintiff and said Johnson, when a sale of said land was attempted to be made by the county court, as school land, in the year 1845 or 1846, did give notice to those persons to whom the land was struck off at the sale, that it was claimed by said Johnson and the plaintiff; thereupon the purchasers, all except one, surrendered their purchases, and refused to comply with the terms of the sale; that Barret also gave a lease to the tenant in possession of the land, from the plaintiff and Johnson.

The plaintiff also charges that, at the sale of the said land in November, 1848, by order of the county court, the defendant again gave notice of the adverse claim of said land under Vasquez, and told the purchasers they were buying a law suit, in consequence of which, the land was sold at less than its value, and a portion of it, two hundred acres, were then bought by Brotherton for said Barret, in pursuance of a previous arrangement between them; that said Barret informed the plaintiff of this sale, and that he had given notice of the claim under Vasquez; that Brotherton had bought the land, and that he (Barret) believed that Brotherton would give at the rate of

one dollar per acre and allow the Vasquez claim to be located elsewhere, in order to quiet his title under the school claim; but that said Barret did not inform the plaintiff that he was a purchaser, and interested in the land adversely; that the plaintiff, confiding in Barret, returned home and left the business to his discretion; that afterwards Barret, pretending to be acting for plaintiff, caused him to be informed that he could obtain no better terms than those he had previously mentioned to him. Plaintiff further charges, that in February, 1849, he returned to St. Louis county, and after consulting Barret as to the best mode of obtaining the largest price for his claim, he went into the neighborhood of the land, and offered it for sale; but Brotherton declined making a compromise with the person to whom he offered it, after consulting his partner, who proves to be said Barret; that Barret then repeatedly told plaintiff that he knew that nothing better than the terms already stated, could be obtained from said Brotherton, and the plaintiff finally acceded to the propositions; that afterwards, learning the fraud which had been practised upon him by said Barret, he claimed to have three-fourths of the land which Barret had procured Brotherton to buy, to be conveyed to him, plaintiff, which Barret refused to consent to, and Brotherton refused to convey, without Barret's consent. The plaintiff then prayed judgment, that Brotherton should convey to him three-fourths of the two hundred acres which he had bought for Barret, on plaintiff's complying with Barret's bond to Brotherton, and cancelling Brotherton's obligation to convey to Barret.

The answer of Brotherton denies many of the most material charges in plaintiff's petition; he denies that there ever was any agreement between himself and Barret, to secure the removal of the Vasquez title, by which said Barret was to receive a conveyance of two hundred arpens, but states expressly that he made an agreement with plaintiff, for the removal of said claim. He admits that he declined making a compromise with the person to whom the plaintiff pretended to have sold the whole claim; but it was not after consulting with Barret. Barret was no part-

ner of the defendant; the defendant denies that plaintiff, at the time of the sale of the school title, was the owner of three-fourths of the Vasquez claim. This quantity was then owned by Robert B. Cowan and John Hinton. The answer of Brotherton has no tendency to support the charges in the bill against Barret.

Barret's answer denies, emphatically, that he was the attorney at law for plaintiff in this land claim. He says he was the attorney of Philip C. Johnson, who owned one-fourth part of the claim; he says that, as Johnson's attorney, he had frequent conversations with plaintiff, who was acting as agent for R. B. Cowan and John Hinton; he admits he gave the notices mentioned, at the sale of the adverse claim; he did this as attorney for Johnson, and in stating the Vasquez claim, he mentioned those interested in it; he denies that Cowan ever paid him a fee, or ever retained him as an attorney at law in the business, or that he ever confided the business to him as such; he states, that he was Johnson's attorney, that he spoke to Brotherton to purchase some lots of the land for him (Barret,) some five lots, amounting to about two hundred arpens, if it sold for not more than six or seven dollars per acre, as that amount would cover Johnson's interest, and if he bought it, and Johnson refused to take it off his hands, he would keep it, and buy Johnson's interest at the price he should ask for it. His answer denies the material charges in the petition; he states that, after he bought, he informed his client, Johnson, who refused to take the land; that Cowan and plaintiff asked the defendant, Barret, to let him have one half of his purchase, as made by Brotherton; that he thought this request unreasonable; that Cowan, however, annoyed him about it so much, that he agreed to let him have half, upon the same terms as Brotherton bought at, if he would pay him for his trouble in addition; that, in pursuance of this understanding, he gave his bond to Cowan, the plaintiff, to convey half of the tract, purchased for him by Brotherton, upon Cowan's paying to him therefor the sum of seven hundred and odd dollars, the half of

Cowan v. Barret.

the purchase money and interest, and a sum for his trouble ; that Cowan never paid one cent of this sum. The answer gives a history of the transaction.

1. The evidence offered by the plaintiff shows nothing to overturn this answer or the answer of Brotherton ; indeed the very foundation of his claim against Barret is taken away by his showing that he had no title to the claim until after this sale to Brotherton, in November, 1848. The deed from Robert B. Cowan to the plaintiff, for this land, under Vasquez, is dated in March, 1849, and so is the deed from Hinton and wife to plaintiff, dated March 20, 1849. These deeds show that he had acquired the claims of these grantors after the purchase by Brotherton, and he shows no evidence of claim or title previously thereto. Again, it appears that the plaintiff, after his knowledge of the purchase by Brotherton for Barret, negotiates with Barret for a portion or share of his interest. The whole evidence produced by the plaintiff shows he had no cause of grievance against Barret. Barret was not his attorney at law, at or before Brotherton bought for him. He had no interest at that time, as appears by his own evidence, in the land ; there could not then have been any relationship of client and attorney between them in regard to his title to this land ; the land was claimed by R. B. Cowan, John Hinton and Philip C. Johnson, at the day of the sale in November, 1848. So that Barret's being the attorney of one tenant in common, and by construction contended to be the attorney for the other tenants in common, will not make him attorney for the grantee of these other tenants in common long after the close of the transaction. From the whole case, then, as appears by the record of the court below, the plaintiff failed to show himself entitled to the judgment prayed for in his petition. The judgment will therefore be affirmed, the other judges concurring.